UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| Brian Foster, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 04 C 2069 |
|  | ) |  |
| Rod R. Blagojevich, and Roger Walker, Jr., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**MEMORANDUM ORDER AND OPINION**

MARVIN E. ASPEN, District Judge:

Plaintiff Brian Foster worked at Dixon Correctional Center ("Dixon") as Assistant Warden of Operations from 2001 to 2003. (Def. Facts ¶¶ 3-4.) Defendant Rod Blagojevich was sworn into office as the governor of Illinois on January 13, 2003. (Pl. Facts ¶ 1.) In August of 2003, the Blagojevich administration terminated Foster allegedly due to his political association and his speech on matters of public concern. (Def. Facts ¶ 4.) Consequently, Foster filed a three count complaint under 42 U.S.C. § 1983 against Blagojevich and Roger Walker, Jr., the Director of the Illinois Department of Corrections ("IDOC"), alleging violations of the ban on political patronage, the First Amendment, and due process.[1] Presently before us is defendants' motion for summary judgment. Defendants argue that they properly exercised their discretion to terminate Foster because his job qualifies as a "policy-making" position exempt from the ban on political patronage. Additionally, defendants contend that Foster's speech was directly related to his

---

[1] Foster voluntarily dismissed the due process claim.

1

duties as Assistant Warden and his political viewpoints and thus they were not entitled to First Amendment protection. Finally, defendants assert the defense of qualified immunity as a shield to liability for any wrongdoing. In support of their motion, defendants proffer the official position description from the Illinois Department of Central Management Services ("CMS") for the Assistant Warden at Dixon.[2] For the reasons discussed below we grant the motion.

## STANDARD OF REVIEW

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.

---

[2] The Assistant Warden position description at issue provides:
> Subject to administrative approval from the Warden ... serves as Assistant Warden of Operations; formulates, organizes, and directs the overall Operations Program for [Dixon]; supervises staff; maintains and enforces disciplinary, safety, security and custodial measures; administratively responsible and accountable for execution of policies and procedures in management of the institution while serving as Duty Warden.
> 1. [A]ssists in the development, establishment and implementation of rules, regulations, directives, policies and procedures of the institution to ensure proper operation of the daily functions; administratively responsible and accountable for execution of policies and procedures in management of the institution while serving as Duty Warden. (35%)
> 2. Plans, organizes and directs the overall Operations []and their managers, including security, physical plant operations, dietary services, inmate discipline ... coordinate all inmate programs related to these functions; participates in the budget process by gathering data from department heads regarding current and anticipated programs and projects; makes recommendations to management outlining budgetary needs. (25%)
> 3. Supervises staff; assigns work; approves time off; provides guidance and training; gives oral reprimands and effectively recommends grievance resolutions; completes and signs performance evaluations; establishes annual goals and objectives; counsels employees on problems with productivity and quality of work; determines staffing needs to achieve program goals and objectives; reviews activity reports. (15%)
> 4. Conducts routine ... safety, health, sanitation and security inspection tours ... makes recommendations to the Warden as to any changes, problems, or improvements. (10%)
> 5. Serves as Chairman of the Adjustment Committee, including making decision on disciplinary problems involving infractions of institutional rules by inmates. (10%)
> 6. Performs other duties as required or assigned which are reasonably within the scope of the duties enumerated above.

Ct. 2505 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quotation marks omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). For purposes of summary judgment, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

**ANALYSIS**

I.      **Count I: "Patronage Dismissal in Violation of First Amendment"**

The Supreme Court recognizes that "party affiliation may be an acceptable requirement for some types of government employment." *Branti v. Finkel*, 445 U.S. 507, 517, 100 S. Ct. 1287, 1294 (1980); *Elrod v. Burns*, 427 U.S. 347, 367, 96 S. Ct. 2673, 2687 (1976) (determining that patronage dismissals were limited to policymaking positions). For example, political affiliation is appropriate where "the *position* held by the individual authorizes, either directly or indirectly, meaningful input into government decision making on issues where there is room for principled disagreement on goals or their implementation." *Tomczak v. City of Chicago*, 765 F.2d 633, 641 (7th Cir. 1985) (quotation omitted). The Seventh Circuit condones the use of

3

official position descriptions as determinative of the "policymaking" nature of the job, assuming the descriptions are reliable and authentic. *Riley v. Blagojevich*, 425 F.3d 357, 361 (7th Cir. 2005).

In support of their motion for summary judgment, defendants proffer the official position description for Foster's Assistant Warden job at Dixon Correctional Facility. (Mot. for Summ. J. Ex. 2, 3.) According to defendants, the official position description has not materially changed in more than two decades, long before Governor Blagojevich took office in Illinois, thus evincing its reliability and the absence of manipulation from Blagojevich's administration. Defendants principally rely on the Seventh Circuit's opinion in *Riley*, wherein the court found that political affiliation was an appropriate requirement for Assistant Wardens based on the official position descriptions - which are substantially similar to the position description in the instant case. The *Riley* court found the descriptions reliable because they had not been materially altered during defendant Governor Blagojevich's tenure, they were publicly available for inspection and challenges, and the descriptions were created and updated pursuant to a well-defined statutory scheme. *Id.* at 361-63. Foster attempts to distinguish *Riley* by challenging the authenticity and reliability of the official position description of his Assistant Warden job.[3]

As a threshold matter, Foster stipulated that the position descriptions submitted as Exhibit 3 to defendants' motion for summary judgment are "true and correct cop[ies] of []

---

[3] Specifically, Foster summarizes his position as follows: "In the instant case, unlike the record articulated by the Panel in *Riley*, FOSTER is challenging the authenticity and reliability of the position descriptions and the Illinois civil service system, the Affidavit of Maribeth Moore, the citations to Illinois law purporting to give authority to the Illinois Department of Central Management Services and the Illinois Civil Service Commission, including the asserted checks and balances ... [and] FOSTER is asserting that elected officials have manipulated the Illinois civil service system and position descriptions[.]" (Resp. to Mot. for Summ. J. at 9.)

Position Description[s] contained in the files of the Illinois Department of Central Management Services ("CMS") for position number 40070-29-93-300-00-01, corresponding to Position Title of Senior Public Service Administrator (working title of Assistant Warden) at Dixon Correctional Center."[4] (Mot. for Summ. J. Ex. 3 (Stipulation Regarding Authenticity ¶¶ 1-7).) Defendants also submitted an affidavit from Maribeth Moore, a CMS employee who is responsible for "the management, maintenance, and retrieval of certain CMS records and documents[,]" which provides that the position descriptions submitted as exhibits to the motion for summary judgment were obtained from CMS files. (*Id.* at Ex. 2 (Moore Aff. ¶¶ 1-11).) Thus, Foster's challenge to the authenticity of the position descriptions is without merit.

Next, Foster argues that the position descriptions are not reliable indicators of the inherent duties of an Assistant Warden at Dixon Correctional Facility because 1) CMS had no authority to create and update the position descriptions; 2) the position descriptions do not accurately reflect the duties of Assistant Warden; and 3) the position descriptions do not include discretionary and policy-making functions. (Resp. to Mot. for Summ. J. at 2-11.) First, Foster questions whether "CMS created and updated the [position description] documents and [whether] the Illinois Civil Service Commission ("Commission") reviewed and approved of the documents." (*Id.* at 3.) According to plaintiff, CMS has "no authority to create or update position descriptions." (*Id.* at 4.) However, CMS was granted explicit statutory authority to "*prepar[e], maint[ain], and revis[e] ...* a position classification plan for all positions [in its jurisdiction], based upon similarity of duties performed, responsibilities assigned, and conditions

---

[4] While Foster attests that he "did not execute any document stipulating that any CMS document was authentic[,]" his attorney signed the stipulation on plaintiff's behalf. (Resp. to Mot for Summ. J. Ex. 32 (Foster Aff. ¶ 65); Mot. for Summ. J. Ex. 3 (Stipulation Regarding Authenticity at 3).)

of employment[.]"⁵ 20 Ill. Comp. Stat. § 415/8(a) (emphasis added). Additionally, CMS is required to "change the allocations of existing positions when sufficient changes occur in duties, responsibilities, or requirements of such positions[.]"⁶ 80 Ill. Adm. Code § 320.80. The Commission is charged with reviewing and approving or disapproving of all CMS position classifications and any subsequent revisions to those classifications. *Id*. at § 415/10(4). Therefore, we do not agree with Foster that defendants "failed to establish the authority by which the CMS position descriptions are promulgated[]" or that defendants "failed to establish that CMS and the Commission act as checks against manipulation." (Resp. to Mot. for Summ. J. at 4.); *see Riley*, 425 F.3d at 361-62, 364.

Foster also implores us not to consider the position descriptions because they have allegedly been manipulated by defendants.⁷ In *Riley*, the Seventh Circuit cautioned that position descriptions cannot be relied upon if they have been "manipulated by officials seeking to expand their power to appoint loyalists beyond the lawful bounds." 425 F.2d at 361. Although, just like the position description in *Riley*, the Assistant Warden position in the case *sub judice* has not materially changed since long before Blagojevich took office. (*See* Mot. for Summ. J. Ex. 2-3.)

---

⁵ The Illinois Administrative Code further mandates that CMS "maintain written specifications for each class created under [the] Position Classification Plan ... includ[ing] the class title, distinguishing features of work, illustrative examples of work, and desirable requirements." 80 Ill. Adm. Code § 320.50.

⁶ The administrative code directs the heads of agencies to report changes in duties to the director of CMS and it authorizes the director of CMS to investigate the accuracy of position descriptions. *Id.* at § 320.20. Agencies and employees can request such investigations and employees can appeal their position classification to the Commission. *Id.* at §§ 320.20, 320.100; 20 Ill. Comp. Stat. § 415/10(5).

⁷ Foster claims that "[Governor Blagojevich's] administration has muscled and admitted manipulating the employment process, as well as, being the subject of a federal investigation into the employment practices at IDOC." (Resp. to Mot. for Summ. J. at 5.) However, he fails to expound upon the relevance, admissibility, or application of the numerous references to his statement of facts.

The evidence simply does not support an inference that "[G]overnor Blagojevich or any other political official caused [the position descriptions] to be altered, as by leaning on the members of the Civil Service Commission." *Riley*, 425 F.2d at 365. Therefore, Foster must either show that the Assistant Warden position description is *systematically* unreliable or that the position description for Assistant Warden is sufficiently distinct from *Riley*.

Foster argues that the Assistant Warden position description is unreliable because it does not accurately reflect the duties of Assistant Warden at Dixon. To support his contention, plaintiff submits affidavits from himself and other IDOC employees who agree, based on their experiences, that Assistant Wardens do not exercise substantial autonomy or discretion. However, disregarding the lack of admissible and relevant evidence,[8] "[t]he test is whether the position held by the individual authorizes, either directly or indirectly, meaningful input into governmental decision making on issues where there is room for principled disagreement on goals or their implementation." *Heck v. City of Freeport*, 985 F.2d 305, 309 (7th Cir. 1993). Thus,"[o]ur focus is on the 'inherent powers' of the office, not what any individual officeholder actually does." *Riley,* 425 F.3d at 360-61 (quotation omitted); *Tomczak v. City of Chicago*, 765 F.2d 633, 642 (7th Cir. 1985) ("[I]t is the position, not the duties performed by a particular occupant of that position, to which we must look."). Foster did not submit any evidence that challenges the *systematic* reliability of the position descriptions. *See Riley*, 425 F2d. at 361-62; (*see* p.6, *supra*.) Rather, Foster asserts that IDOC's bureaucratic hierarchical system limits Assistant Wardens' ability to exercise discretion and that the discretionary duties listed in the

---

[8] Foster's brief in opposition to summary judgment is replete with unsupported conclusory arguments. (*See generally,* Resp. to Mot. for Summ. J. at 2-11.) We disregarded any inappropriate portions of plaintiff's Rule 56.1 statements, i.e. all non-material facts or material facts that are not supported by admissible evidence. *See Malec,* 191 F.R.D. at 584.

position description are insufficient to justify an exemption to the ban on political patronage.[9]

According to Foster, the CMS position description for Assistant Warden does not sufficiently embody inherent discretionary or policy-making duties. Relatedly, Foster avers that "IDOC had a command and control structure that required all Wardens and Assistant Wardens to act under specific administrative directives from their superiors. [Thus, t]he duties and responsibilities resulting from th[ose directives] were of limited scope to allow for tight control within the chain of command[.]" (Foster Aff. ¶ 3.) However, Foster neglects to consider that "policymaking and policy implementation may occur at many levels, even within a particular office whose sphere of authority is narrowly circumscribed ... That [one] d[oes] not have final decisionmaking authority is not determinative." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981); *see also Selch v. Letts,* 5 F.3d 1040, 1043-47 (7th Cir. 1993) (finding that a highway subdistrict superintendent exercised policymaking functions despite his stature at the "lower end of the management hierarchy").

---

[9] Foster also argues that the position description for Assistant Warden does not reveal inherent discretionary duties because the position descriptions for other jobs at Dixon include many of the same responsibilities and those jobs are internally classified as "Rutan exempt." (*See* Resp. to Mot. for Summ. J. at 3, 5.) However, even assuming the position descriptions submitted as exhibits to plaintiff's 56.1 statement are admissible, a plain reading of the various position descriptions reveals differences in expectations, duties, and time dedicated to judgmental or policy-oriented tasks. The Assistant Warden position description lists a *combination* of multiple discretionary functions, which the Seventh Circuit deemed sufficient to exempt such employees from the ban on political patronage. Foster does not direct us to any judicial determination that jobs with similar position descriptions are subject to the ban on political patronage. Additionally, evidence that Blagojevich attempted to eliminate the Assistant Warden position for budgetary reasons does not suggest that political affiliation is unimportant for the position. Unlike *Carlson v. Gorecki*, 374 F.3d 461, 465-67 (7th Cir. 2004), the Assistant Warden position is still existent at IDOC despite the administration's desire to streamline the workforce. *See also Tomczak*, 765 F.2d at 643 (inferring that "the elimination of an employee's position after his dismissal indicates that the dismissal was politically motivated [] might unduly constrain a new administration from attempting to achieve cost efficiencies by reducing the size of its executive work force."). Based on the totality of the circumstances, the proffered evidence does not impugn the reliability or accuracy of the Assistant Warden position description or the inherent discretionary nature of the job.

The position description for Foster's Assistant Warden job is nearly identical to the position description in *Riley* for Assistant Warden of operations. *Compare Riley,* 425 F.2d at 362-63, *with* Mot. for Summ. J. Ex. 3(A). In *Riley,* the Seventh Circuit reviewed two position descriptions for Assistant Warden of operations and programming, and determined that the descriptions set forth "a variety of tasks that are judgmental, policy-oriented, and politically sensitive." 425 F.2d at 363. Like the plaintiffs in *Riley*, Foster's Assistant Warden position entailed service as Duty Warden, assistance "in the development, establishment and implementation of rules, regulations, directives, policies and procedures of the institution[,]" responsibility for "plan[ning], organiz[ing] and direct[ing] the overall Operations function and their managers[,]" and participation in the budget process. (Mot. for Summ. J. Ex. 3(A).) Therefore, despite its place in the IDOC hierarchy, the position description for Foster's Assistant Warden position sufficiently ascribes "judgmental, policy-oriented, and politically sensitive" duties so as to shield defendants from liability for terminating plaintiff based on political patronage.[10] *See Riley,* 425 F.3d at 363.

## II. Count II: "Retaliation in Violation of First Amendment"

Foster alleges that defendants fired him in retaliation for speaking out on matters of public concern in violation of the First Amendment of the Constitution. (Am. Compl. ¶¶ 47-66.) "In *Pickering [v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S. Ct. 1731 (1968)]*,* the Supreme Court ...

---

[10] Foster's reliance on *Derringer v. Civil Service Commission*, a 1978 Illinois appellate court decision is misplaced. 383 Ill. App. 3d 239, 383 N.E.2d 771 (5th Dist. 1978). In *Derringer,* the court considered whether an assistant warden was transferred for political reasons. *Id.* at 772-775. *Derringer* did not involve a determination of the inherent nature of the assistant warden position. Rather, the court merely assumed that the assistant warden position was subject to the ban on political patronage. *Id.* at 775. Since *Derringer*, a state court opinion decided long before *Riley,* did not address the use or reliability of position descriptions to assess the inherent powers of assistant warden, it is unpersuasive.

set forth an approach designed to strike an appropriate balance between the rights of the government employee as a private individual with freedom of expression and the need of government to conduct its affairs effectively and efficiently." *Vargas-Harrison v. Racine Unified Sch. Dist.,* 272 F.3d 964, 971 (7th Cir. 2001). However, courts need not engage in the *Pickering* balancing analysis when employment decisions are motivated by a policy-making employee's speech regarding his official duties or political views. *Id.*; *cf. Bonds v. Milwaukee County,* 207 F.3d 969, 979 ("[C]ourts must apply Pickering balancing when the speech at issue does not implicate the employee's politics or substantive policy viewpoints."). While "the government cannot retaliate against employees for engaging in constitutionally protected speech[,] ... the First Amendment does not prohibit the discharge of a policy-making employee when that individual has engaged in speech on a matter of public concern in a manner that is critical of superiors or their stated policies." *Vargas-Harrison,* 272 F.3d at 970-71; *see also Bonds,* 207 F.3d at 978 ("[A]n employer can punish policy-making employees who disagree with it on job-related policy."). Therefore, since Foster's Assistant Warden position qualifies as a "policy-making" job, he cannot maintain a First Amendment retaliation claim if his speech involved his duties as Assistant Warden or his political viewpoints.

Foster contends that he spoke out on Blagojevich's allegedly unlawful political patronage hiring practices,[11] safety concerns, the evaluation process, staffing issues, use of temporary assignments (which allegedly resulted in increased costs and inefficiencies), and the effect of government policies on the ability to maintain order, discipline, and safety within the prison.

---

[11] To the extent that Count II is "merely a restatement of the[] claim that political affiliation is a forbidden criterion for an assistant warden's job," Foster cannot survive summary judgment for the reasons discussed in Section I, *supra*.

(Pl. Facts ¶¶ 130-147.) Despite his assertions to the contrary, Foster's speech centers on his opposition to Blagojevich's administration's policies regarding IDOC. Moreover, the issues which concerned Foster directly impacted and correlated to his duties as Assistant Warden.[12] Therefore, terminating Foster for speaking out against Blagojevich's IDOC policies did not violate the First Amendment.[13] *See Vargas-Harrison*, 272 F.3d at 971, 973-74; *see also Bonds* 207 F.3d at 978.

---

[12] According to the CMS position description, Assistant Wardens were charged with "maintain[ing] and enforc[ing] disciplinary, safety, security and custodial measures ... Plan[ing], organiz[ing] and direct[ing] the overall Operations function and their managers ... [D]etermin[ing] staffing needs to achieve program goals and objections ... mak[ing] recommendations to the Warden as to any changes, problems or improvements." (Mot. for Summ. J. Ex. 2-3.)

[13] We need not apply *Pickering* to balance Foster's right to free speech with the government's need to operate effectively and efficiently given the nature of plaintiff's position, speech, and termination. *See Vargas-Harrison,* 272 F.3d at 971-72 (determining that *Pickering* did not apply to a policy-making plaintiff whose speech directly related to her employment duties); *Bonds,* 207 F.3d at 979 (applying *Pickering* because the governmental entity elected not to hire plaintiff based on doubts about his trustworthiness, not the content of his political speech).

## CONCLUSION

For the reasons described above, we grant defendants' motion for summary judgment on both counts and dismiss the complaint.[14] It is so ordered.

*[signature: Marvin E. Aspen]*

Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: May 18, 2006

---

[14] Based on our ruling, it is unnecessary to discuss defendants' qualified immunity defense. Nonetheless, we agree with defendants that at the time of Foster's discharge, it was not clearly unconstitutional or unlawful to terminate an assistant warden with duties similar to those described in the position description at issue based on political patronage. Therefore, the doctrine of qualified immunity would shield defendants from liability even if Foster raised a genuine issue of material fact as to the nature of his position, speech or termination. *See, e.g., Flenner v. Sheahan*, 107 F.3d 459, 461-462 (7th Cir. 1997) (quotation omitted) ("The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *Pounds v. Griepenstroh,* 970 F.2d 338, 342 (7th Cir. 1992); *Colaizzi v. Walker,* 812 F.2d 304, 308 (7th Cir. 1987).